QUINCE, J.
This case is before the Court for review of the decision of the Fourth District Court of Appeal in Johnson v. State, 6 So.3d 1262 (Fla. 4th DCA 2009). The *1307 district court’s decision expressly affects a class of constitutional or state officers. Additionally, the Office of Criminal Conflict and Civil Regional Counsel (RCC) alleges the Fourth District’s decision expressly and directly conflicts with the decision of the Third District in State v. Public Defender, Eleventh Judicial Circuit, 12 So.3d 798 (Fla. 3d DCA 2009) (“Public Defender”), review granted, 34 So.3d 2 (Fla.2010), on the same question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we approve in part and quash in part the decision of the Fourth District.
FACTS AND PROCEDURAL HISTORY
This case began when codefendants Christopher Johnson and James Mayfield were charged for a robbery with a firearm and carjacking in Broward County. Due to a conflict of interest, Johnson was appointed private counsel, paid for by the State. After being found guilty, both defendants appealed their convictions to the Fourth District Court of Appeal.
The appellate public defender filed a motion for leave to withdraw as Johnson’s counsel on the basis of conflict because the public defender was already representing codefendant Mayfield in an appeal stemming from his conviction in the same case. The Office of the Attorney General did not object to the public defender’s withdrawal. However, RCC objected to the withdrawal. The public defender argued that RCC lacked standing to challenge the public defender’s motion to withdraw and that conflicts inherent in representing codefen-dants eliminated the necessity for fact-finding in the trial court. RCC responded that conflict at the trial level does not automatically apply at the appellate level and there must be a showing of an actual conflict in order for RCC to be appointed for representation.
After hearing argument from the parties, the Fourth District granted the public defender’s motion to withdraw and appointed RCC to represent Johnson in his appeal. The Fourth District concluded that the plain language of section 27.511(8), Florida Statutes (2008), provides that the public defender’s certification of conflict alone is sufficient to shift representation of the defendant to RCC. Johnson, 6 So.3d at 1266. The Fourth District explained that this statute “places the determination of the existence of a conflict in the hands of the [public defender] — without any inquiry by an appellate court.” Id. Under the Fourth District’s interpretation of the statute, if the public defender “certifies conflict then RCC shall handle the appeal.” Id. The Fourth District further concluded that section 27.5303(l)(a), Florida Statutes (2008), only authorizes factual inquiries into the adequacy of the public defender’s representations regarding conflict by trial courts, not when the appellate public defender certifies conflict. Id. at 1266-67. The Fourth District also noted that a trial court’s finding of conflict in representing codefendants will be deemed valid for the codefendants’ appeals as well. Id. at 1267. Finally, the district court concluded that RCC has no standing to object to a public defender’s motion to withdraw. Id. In reaching this conclusion, the district court relied on the fact that section 27.5303(l)(a), which gave the Justice Administrative Commission standing to challenge a public defender’s motions, was repealed in 2007 and no other statute gave RCC standing to challenge a public defender’s motion to withdraw. Id. at 1268. Furthermore, the district court stated it would no longer relinquish jurisdiction to the trial court for an inquiry in such cases. Id. Instead, if the public defender certifies conflict, then RCC will *1308 represent the client unless RCC certifies its own conflict. Id.
RCC sought review in this Court based on express and direct conflict with the decision of the Third District in Public Defender and because the Fourth District’s decision affects a class of constitutional or state officers, i.e., all RCC offices in the state. In Public Defender, the Third District held that the state attorneys had standing to challenge public defender motions to withdraw based on the state attorney’s status as a party in the case and the state attorney’s statutory obligations. RCC argues that Public Defender also implied that RCC has standing to oppose such motions when the court stated that RCC’s motion to intervene was properly denied because it was untimely. Id. at 800 n. 2.
RCC also asserts that this Court has jurisdiction to review the Fourth District’s decision because the court’s ruling that RCC lacks standing to oppose the public defender’s motion to withdraw, Johnson, 6 So.3d at 1267, affects a class of state officers. We agree. The Fourth District’s decision as to standing will affect RCC’s power to oppose motions to withdraw filed by public defenders. Because the district court based its decision on statutory interpretation, the decision is applicable to all RCC offices around the state, thus affecting the entire class of state officers.
While RCC did not make this argument in its petition for review, we also conclude that the decision below expressly affects the powers of public defenders to withdraw from cases. The district court decision effectively expands the powers of public defenders to withdraw from cases by finding that when a public defender certifies a conflict at the appellate level the case will automatically be transferred to RCC without a determination from a district court of appeal. Id. at 1266.
ANALYSIS
The underlying case involves a judicial interpretation of the application of sections 27.511(8) and 27.5303(l)(a) and whether RCC has standing to challenge a public defender’s motion to withdraw. In order to address these issues, we must discuss the underlying right to counsel and the general principles of statutory interpretation.
I. Right to Counsel
Criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution, see Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and article I, section 16 of the Florida Constitution. In addition, this Court has acknowledged that “the right to effective assistance of counsel encompasses the right to representation free from actual conflict.” Hunter v. State, 817 So.2d 786, 791 (Fla.2002). Conflict-of-interest cases usually arise at the trial level, but can arise at any level of the judicial process where one attorney represents two or more clients. Barclay v. Wainwright, 444 So.2d 956, 958 (Fla.1984) (granting habeas relief based on appellate counsel’s conflict of interest in representing two codefendants). Generally, an attorney has an ethical obligation to avoid conflicts of interest and should advise the court when one arises. Cuyler v. Sullivan, 446 U.S. 335, 346, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). An actual conflict of interest that adversely affects a lawyer’s performance violates a defendant’s Sixth Amendment right to effective assistance of counsel. Id. at 348, 100 S.Ct. 1708. A conflict occurs “whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing *1309 plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing.” Foxworth v. Wainright, 516 F.2d 1072, 1076 (5th Cir.1975).
In an effort to meet its responsibility to provide counsel to indigent defendants, as guaranteed under the Sixth Amendment and applied to the states in Gideon v. Wainwright, the Florida Legislature first established the Office of the Public Defender in 1963. See ch. 63-^09, § 1, Laws of Fla. (enacting section 27.50, Florida Statutes (1963), which created the Office of the Public Defender). The Legislature subsequently approved a proposal to amend the Florida Constitution and elevate the Office of the Public Defender to the level of a constitutional officer, which was approved by the electorate and adopted in 1972. See art. V, § 18, Fla. Const.; see also Summary of Amendment Revising Florida Court Structure, Senate Joint Res. No. 52D (noting that “[t]he position of public defender gains constitutional status” in article V in the 1972 amendment).
The public defender in each circuit is primarily responsible for representing indigent defendants who have been charged or arrested for an enumerated list of criminal offenses and in a limited number of civil proceedings. See § 27.51(1), Fla. Stat. (2008). However, in those cases where the public defender has a conflict of interest, the Legislature provided for the appointment of RCC. See § 27.511(5), Fla. Stat. (2008). As this Court previously explained, “The Legislature’s primary intent [in establishing RCC] was to create a backup system to handle those cases in which a public defender has a conflict and to do so in a fiscally sound manner in accordance with constitutional principles of due process.” Crist v. Fla. Ass’n of Criminal Defense Lawyers, 978 So.2d 134, 148 (Fla.2008). If RCC has a conflict, the court appoints private counsel from the registry. § 27.40(2), Fla. Stat. (2008).[1]
Section 27.5303, which addresses conflicts of interest by the public defender and RCC, provides that in determining whether or not there is a conflict of interest, the public defender and RCC “shall apply the standards contained in the Uniform Standards for Use in Conflict of Interest Cases found in appendix C to the Final Report of the Article V Indigent Services Advisory Board dated January 6, 2004.” § 27.5303(l)(e), Fla. Stat. (2008). The Uniform Standards contained in the Advisory Board’s report devote an entire section to conflicts of interest involving co-defendants and set out several general considerations involving the representation of codefendants. While the Uniform Standards provide that joint representation of codefendants is not per se violative of the constitutional guarantee of effective assistance of counsel, they also warn that multiple representation “engenders special dangers” and “is suspect,” as explained by the United States Supreme Court in Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), and Holloway v. Arkansas, 435 U.S. 475, 489, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Article V Indigent Servs. Advisory Bd., Final Report at 73 (2004), available at http://www. flcourtsl8.org/PDF/articleV_final_report. pdf. This Court has also recognized that the “interests and defenses of most co-defendants are conflicting.” Baker v. State, 202 So.2d 563, 566 (Fla.1967).
*1310 In light of these considerations, the Uniform Standards “strongly advise” attorneys to follow Standard 4-8.5 of the ABA Standards for Criminal Justice, which counsels that the potential for conflict of interest in representing multiple codefen-dants “is so grave that ordinarily defense counsel should decline to act for more than one of several codefendants except in unusual situations.” Final Report at 78 (quoting Standards for Cñminal Justice: Prosecution Function and Defense Function § 4-3.5 (3d ed. 1993)). The Uniform Standards also provide that “[ejarly withdrawal from joint representation conserves public defender resources, avoids delay, and better serves the client.” Id. at 74. Public defenders are warned that persisting in joint representation until both clients are interviewed and an actual conflict is discovered is likely to result in the public defender having to withdraw from representing both clients. Id.
In determining whether a conflict of interest applies to joint representation of codefendants, the Uniform Standards advise attorneys to consider the following: (1) whether it appears that the attorney will have an opportunity to negotiate a plea in one of the cases; (2) whether one client is more culpable than the other; (3) whether the defense of one client will be inconsistent or antagonistic to the defense of the others; (4) whether one of the clients has given a statement to the police; (5) whether the co-defendants gave conflicting accounts of the events; and (6) whether one of the client’s past record, family history, etc., is so different from the other that an argument could be made that one defendant should receive a lighter sentence. Id. at 74-75.
II. Statutory Interpretation
Judicial interpretations of statutes are pure questions of law subject to de novo review. State v. Sigler, 967 So.2d 835, 841 (Fla.2007). “[LJegislative intent guides statutory analysis, and to discern that intent we must look first to the language of the statute and its plain meaning.” Tasker v. State, 48 So.3d 798, 804 (Fla.2010) (quoting Fla. Dep’t of Children & Family Sens. v. P.E., 14 So.3d 228, 234 (Fla.2009)). “[LJegislative intent is determined primarily from the text” of the statute. Id. (quoting Continental Cas. Co. v. Ryan Inc. Eastern, 974 So.2d 368, 374 (Fla.2008)). “Where the statute’s language is clear or unambiguous, courts need not employ principles of statutory construction to determine and effectuate legislative intent.” Fla. Dep’t of Children & Family Servs., 14 So.3d at 234.
Thus, we begin our analysis with careful consideration of the text of the statutes at issue. Section 27.511(8), Florida Statutes (2008), provides:
The public defender for the judicial circuit specified in s. 27.51(4) shall, after the record on appeal is transmitted to the appellate court by the office of criminal conflict and civil regional counsel which handled the trial and if requested by the regional counsel for the indicated appellate district, handle all circuit court appeals authorized pursuant to paragraph (5)(f) within the state courts system and any authorized appeals to the federal courts required of the official making the request. If the public defender certifies to the court that the public defender has a conflict consistent with the criteria prescribed in s. 27.5303 and moves to withdraw, the regional counsel shall handle the appeal, unless the regional counsel has a conflict, in which case the court shall appoint private counsel pursuant to s. 27.40.
The Fourth District concluded that this statute specifically governs conflicts relating to the appellate public defender. Because the last sentence of the statute pro *1311 vides that if the public defender “certifies ... conflict consistent with the criteria” specified in [section] 27.5303 and “moves to withdraw, the regional counsel shall handle the appeal,” the Fourth District concluded that appellate courts are not authorized to review such motions or to inquire into the adequacy of the conflict representations (as section 27.5303(l)(a) specifies) and certification of conflict by the appellate public defender must result in appointment of RCC. Johnson, 6 So.3d at 1266. We disagree with the Fourth District’s interpretation as it is not consistent with the history of the statute or the Legislature’s stated intent in amending the statute to include the language which the Fourth District relies upon.
Section 27.511 is entitled “Offices of criminal conflict and civil regional counsel; legislative intent; qualifications; appointment; duties.” § 27.511, Fla. Stat. (2008) (emphasis added). Section 27.511(8) was created in 2007 when the Legislature established the RCC. See ch. 2007-62, § 4, Laws of Fla. The original version of the statute provided that “[t]he office of criminal conflict and civil regional counsel shall handle all circuit court appeals within the state courts system and any authorized appeals to the federal courts which are required in cases in which the office of criminal conflict and civil regional counsel is appointed under this section.” § 27.511(8), Fla. Stat. (2007). While the staff analysis of the bill does not address subsection (8) specifically, it does state that section 27.511 was created to establish RCC, which “shall provide representation on the same types of cases as the public defender” when the case is assigned to regional counsel because “the public defender has a conflict.” Fla. S. Comm, on Crim. & Civ. Just. Approp., PCS for SB 1088 (2007), Staff Analysis 2 (Mar. 19, 2007). Subsection (8), which is quoted in full above, was amended by the Legislature at its next session in 2008. According to the staff analysis of the bill, the 2008 amendment “clarif[ies] that the public defender appellate offices are to handle indigent criminal appeals unless there is a conflict of interest. If there is a conflict, the regional conflict counsel shall take the case.” Fla. S. Comm, on Crim. & Civ. Just. Approp., PCS for SB 1790 (2008), Staff Analysis 3 (Mar. 31, 2008). There is no discussion of changing the standards for appellate court consideration of motions to withdraw. Further, as the title of the section indicates, the statute was intended to create RCC, state the legislative intent for creating RCC, list the qualifications for RCC and how RCC should be appointed, and list the duties of RCC, which include representation on appeals if the public defender has a conflict.
Additionally, the language and history of section 27.5303(l)(a) do not support the Fourth District’s interpretation of the statutes. Under the Fourth District’s interpretation, if the appellate public defender certifies conflict then RCC shall handle the appeal. Section 27.5303 is entitled “Public defenders; criminal conflict and civil regional counsel; conflict of interest.” § 27.5303, Fla. Stat. (2008) (emphasis added). In fact, the whole subject matter of section 27.5303 is conflicts of interest, the appointment of other counsel when a conflict occurs, and how a conflict is to be determined. Subsection (l)(a) specifically addresses conflicts involving a public defender and provides in pertinent part:
If, at any time during the representation of two or more defendants, a public defender determines that the interests of those accused are so adverse or hostile that they cannot all be counseled by the public defender or his or her staff without conflict of interest, or that none can be counseled by the public defender or his or her staff because of a conflict of *1312 interest, then the public defender shall file a motion to withdraw and move the court to appoint other counsel. The court shall review and may inquire or conduct a hearing into the adequacy of the public defender’s representations regarding a conflict of interest without requiring the disclosure of any confidential communications. The court shall deny the motion to withdraw if the court finds the grounds for withdrawal are insufficient or the asserted conflict is not prejudicial to the indigent client. If the court grants the motion to withdraw, the court shall appoint one or more attorneys to represent the accused, as provided in s. 27.40.
§ 27.5303(l)(a), Fla. Stat. (2008).
This provision was originally contained in section 27.53(3) of the Florida Statutes. In Guzman v. State, 644 So.2d 996 (Fla.1994), superseded by ch. 99-282, § 1, Laws of Fla., as recognized in Snelgrove v. State, 921 So.2d 560, 566 n. 11 (Fla.2005), this Court reversed a defendant’s conviction for first-degree murder and his death sentence because the trial court erroneously denied the public defender’s motion to withdraw based on conflicts of interest between Guzman and other clients of the public defender’s office. Id. at 997. This Court stated that once a public defender moves to withdraw based on a conflict due to adverse or hostile interests between two clients under section 27.53(3), the trial court must grant separate representation. Id. at 999. At the time, the statute provided that if a public defender determined that the interests of the clients were adverse or hostile, the public defender had a duty to move the court to appoint other counsel and the court could appoint another member of the Florida Bar to represent the accused. § 27.53(3), Fla. Stat. (1991). Following this Court’s decision in Guzman, the Legislature amended section 27.53(3) to provide that under such circumstances the public defender shall file a motion to withdraw and the court “shall review and may inquire or conduct a hearing into the adequacy of the public defender’s representations regarding a conflict of interest without requiring the disclosure of any confidential communications. The court shall permit withdrawal unless the court determines that the asserted conflict is not prejudicial to the indigent client. If the court grants the motion to withdraw, it may appoint [a member of the Bar] ... to represent those accused.” Ch. 99-282, § 1, at 3084-85, Laws of Fla.
The staff analysis of the bill specifically references this Court’s opinion in Guzman, noting that “[although the statute uses permissive language, according to the Florida Supreme Court, when a public defender certifies that there is conflict of interest, the trial court must grant the motion to withdraw ... [and] may not reweigh the facts that gave rise to the public defender’s determination that a conflict exists.” Fla. H.R. Comm, on Crime & Pun., CS for HB 327 (1999) Staff Analysis 2 (final June 14,1999). The amended statute provides for the court to review the adequacy of the public defender’s representations as to conflict and to inquire further, if necessary. Thus, the amendment was intended to change this Court’s previous interpretation of how motions to withdraw should be handled. Under the amended statute, a court is no longer required to automatically grant a public defender’s motion to withdraw based upon an assertion of conflict. In fact, the court is specifically charged with reviewing the motion and making a determination of whether the asserted conflict is prejudicial to the client.
In 2003, this provision was moved to *1313 section 27.5303[2] as part of a comprehensive bill dealing with the implementation of Revision 7 to Article V of the Florida Constitution. Fla. H.R. Comm, on Ap-prop., HB 113A (2003), Staff Analysis 1 (May 14, 2003). The staff analysis dealing with “Conflict motions” states that the bill “expressly directs judges to look into the adequacy of the motion to withdraw due to an ethical conflict.” Id. at 7. The analysis also notes that “[cjurrently, there appears to be some difference of opinion concerning the extent to which the court can inquire into the sufficiency of a motion filed by a public defender to withdraw from representation due to an ethical conflict of interest.” Id.
The plain language of section 27.5303(l)(a) specifies when it applies and what action the public defender and court must take. The opening sentence provides that “[i]f, at any time” during the representation of multiple defendants a public defender determines that they cannot all be counseled without a conflict of interest, then the public defender “shall file a motion to withdraw and move the court to appoint other counsel.” § 27.5303(l)(a), Fla. Stat. (2008) (emphasis added). The second sentence of the statute provides: “The court shall review and may inquire or conduct a hearing into the adequacy of the public defender’s representations regarding a conflict of interest....” Id. (emphasis added). The third sentence provides: “The court shall deny the motion to withdraw if the court finds the grounds for withdrawal are insufficient or the asserted conflict is not prejudicial to the indigent client.” Id. (emphasis added). The next sentence provides: “If the court grants the motion to withdraw, the court shall appoint one or more attorneys to represent the accused.... ” Id. (emphasis added). This language clearly indicates that the statute applies at any time a conflict arises, not just at the trial level. It also indicates that the public defender must file a motion to withdraw and that court review is mandatory.
We reject the public defender’s argument that this statute cannot apply to appellate courts because appellate courts do not conduct hearings as the second sentence of the statute provides. In fact, appellate courts do review motions for their adequacy and can direct further inquiry on motions through orders to show cause or by scheduling oral argument. Moreover, when section 27.511(8) and section 27.5303(l)(a) are read in pari materia, there is no contradiction in the statutes and one can discern a reconciled legislative intent that courts review all motions to withdraw, at both the trial and appellate level, and make further inquiry if necessary.
In light of the plain language, the titles of the statutes, and the legislative history of sections 27.511(8) and 27.5303(l)(a), we disagree with the Fourth District’s interpretation of the statutes. Instead, we hold that section 27.5303(l)(a) governs all public defender motions to withdraw based on conflict, both at the trial and appellate level, and the court where the motion is filed is required to review such motions for sufficiency.
III. Standing
The Fourth District also ruled that RCC has no standing to object to a public defender’s motion to withdraw. For the reasons explained below, we agree and *1314 approve that part of the Fourth District’s decision.
“Determining whether a party has standing is a pure question of law to be reviewed de novo.” Sanchez v. Century Everglades, LLC, 946 So.2d 563, 564 (Fla. 3d DCA 2006) (quoting Alachua County v. Scharps, 855 So.2d 195, 198 (Fla. 1st DCA 2003)). Generally, standing “requires a would-be litigant to demonstrate that he or she reasonably expects to be affected by the outcome of the proceedings, either directly or indirectly.” Hayes v. Guardianship of Thompson, 952 So.2d 498, 505 (Fla.2006); see generally Brown v. Firestone, 382 So.2d 654, 662 (Fla.1980) (“[T]his Court has long been committed to the rule that a party does not possess standing to sue unless he or she can demonstrate a direct and articulable stake in the outcome of a controversy.”); Weiss v. Johansen, 898 So.2d 1009, 1011 (Fla. 4th DCA 2005) (“Standing depends on whether a party has a sufficient stake in a justiciable controversy, with a legally cognizable interest which would be affected by the outcome of the litigation.”). Thus, standing to bring or participate in a particular legal proceeding often depends on the nature of the interest asserted.
In In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla.1990) (“Prosecution of Criminal Appeals ”), and Escambia County v. Behr, 384 So.2d 147, 150 (Fla.1980), this Court held that a court considering a motion for withdrawal by the public defender “does not have to ... allow the county an opportunity to be heard before appointing private counsel,” even though, at that time, the county would bear the financial burden of compensating the appointed private counsel. Behr, 384 So.2d at 150; see also Prosecution of Criminal Appeals, 561 So.2d at 1138 (reaffirming statement from Behr). Thus, a financial obligation to pay the appointed counsel was not a sufficient stake in the outcome to give the counties standing to be heard on the motion to withdraw.
The Third District was presented with a similar issue on standing in State v. Public Defender, Eleventh Judicial Circuit, 12 So.3d 798 (Fla. 3d DCA 2009). The Third District was asked to determine whether the State had standing to oppose a motion to withdraw by the public defender. The Third District noted that unlike the counties in In re Prosecution and Behr, the State is a party to the criminal cases and is treated by statute differently than the counties. Public Defender, 12 So.3d at 801. The state attorney has a statutory obligation to “appear in the circuit and county courts within his or her judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions, civil or criminal, in which the state is a party.” Id. (citing § 27.02(1), Fla. Stat. (2004)). Thus, the Third District concluded, the State has standing to challenge motions filed by the public defender.
We conclude that the instant case is analogous to In re Prosecution and Behr. While RCC has an articulable stake in the outcome of the proceedings, similar to the counties, its statutory duty of representation only arises when the court grants a public defender’s motion to withdraw based on a conflict of interest. Similarly, in In re Prosecution and Behr, the counties only had a responsibility to fund private counsel if the public defender was permitted to withdraw due to a conflict. Unlike the State in Public Defender, RCC does not seek standing based on its status as a party in the case. In Public Defender, the Third District’s determination of standing was based on the State’s status as a party, as well as the statutory obligation of state attorneys to prosecute or defend on behalf of the State.
Additionally, as this Court held in Behr, “the court has the option of appoint *1315 ing the public defender or private counsel. This is a matter within the sound discretion of the trial court judge. The court does not have to make any prerequisite findings or allow the county an opportunity to be heard before appointing private counsel.” 384 So.2d at 150. Likewise, the court does not have to allow RCC an opportunity to be heard before granting a public defender’s motion to withdraw.
Because RCC is not a party, it is not in the best position to address the determination of conflict. As the Fourth District explained:
The determination that a conflict results from representation of multiple defendants in any court is an issue turning on privileged facts lying beneath the professional judgment of the [public defender] — facts that are simply incapable of being made known in court without compromising the client. The decision to assert such a conflict resides in the presumed good faith of lawyers as officers of the court having the duty to avoid such conflicts. The lawyer involved in the case is the person with the primary responsibility of avoiding unethical representation and of asserting and protecting the interests of the defendant.
Johnson, 6 So.3d at 1268. Thus, we conclude that RCC does not have standing to challenge a public defender’s good faith request to withdraw based on conflict.[3]
CONCLUSION
For the reasons expressed above, we quash in part and approve in part the decision of the Fourth District in this case.
It is so ordered.
LEWIS, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., concurs in result.
CANADY, C.J., concurs in part and dissents in part with an opinion, in which POLSTON, J., concurs.

. Section 27.40(3), Florida Statutes (2008), provides for the maintenance of a registry of attorneys in private practice. Attorneys on the registry have certified that they meet the minimum requirements set forth in the laws for court appointment and are available to represent indigent defendants. Id. § 27.40(3)(a). The attorneys from the registry are appointed in rotating order. Id. § 27.40(3)(b).

. See ch. 2003-402, § 19, Laws of Fla. The 2003 amendment also gave the Justice Administration Committee standing to object to the public defender’s motions to withdraw. This is pertinent to the standing issue.

. We conclude that the instant case is not in express and direct conflict with the decision in Public Defender because the Third District did not rule on the merits of RCC's standing to intervene in that case. See Public Defender, 12 So.3d at 800 n. 2. However, to the extent that Public Defender may be read as implying that RCC would have been permitted to intervene had a timely motion been filed, we disapprove the decision because it is not consistent with our reasoning in this case.